Filed 1/2/25  In re J.T. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | B335203<br><br>(Los Angeles County Super. Ct. Nos. 23CCJP02065, 23CCJP02065A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>J.T.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tara L. Newman, Judge.  Affirmed.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

---

Father J.T. appeals from a juvenile court order terminating his parental rights over his son, J., pursuant to Welfare and Institutions Code section 366.26.[1] He contends the matter must be remanded for further proceedings because the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901, et seq.) (ICWA). DCFS counters that it satisfied its duty to conduct a reasonable inquiry by gathering relevant information from multiple family members and providing that information to the identified tribes. We agree with DCFS that its efforts satisfied the statutory requirements. We therefore affirm.

## BACKGROUND

Because the sole issue on appeal is compliance with ICWA, we limit our summary of the facts to those relevant to that issue except as necessary for context.

J. was born in April 2021 to father and mother, A.D. Father also has an older child, P. In June 2023, DCFS filed a dependency petition on behalf of J. under section 300, subdivisions (a), (b)(1), and (j). The petition alleged that J. was at risk of harm due to a history of violent altercations between father and mother in J.'s presence, culminating on June 17, 2023,

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

when father "stabbed mother in the face and slashed mother's neck, face, and wrist with a knife, resulting in the mother's death." Father was arrested and charged with murder the following day. J. was detained from father and placed in foster care. DCFS further alleged that J.'s half-sibling, P., was a current dependent of the juvenile court receiving permanent placement services due to the history of violence between father and his female companions.

In the accompanying Indian Child Inquiry Attachment (ICWA-010(A)), DCFS checked the box indicating that it had "not yet been able to complete the inquiry about the child's Indian status."

In the detention report, DCFS noted that multiple relatives were requesting consideration for J.'s placement or were otherwise involved in the case, including paternal grandmother L.D., maternal grandmother B.M., paternal cousin A.M. (later referred to as paternal great-cousin), paternal aunt D.T. (P.'s current caregiver), and J.'s godmother D.G.[2]

At the June 2023 detention hearing, the court ordered J. to remain detained from father. The court deferred a paternity finding and a determination of ICWA status until father's appearance. The court inquired of paternal aunt and paternal great-cousin—who were present at the hearing—whether they had any knowledge of Native American ancestry in their family. Both stated they did not have any such knowledge. The court also ordered DCFS to "interview all family members regarding

---

[2] For clarity, we refer to family members by their title (e.g., paternal grandmother). Where there is more than one individual with the same title, we also include their initials.

Indian ancestry" and to provide updates regarding ongoing efforts as to ICWA in every report throughout the case.

In a last-minute information filed July 7, 2023, DCFS detailed its recent contact with relatives, principally focused on assessing their requests for J.'s placement. This included contact with paternal great-cousin, maternal grandmother, maternal great-uncle D.D., maternal great-aunt P.D. and her daughter, maternal cousin T.B., maternal aunt M.G., and her cousin, maternal cousin T.S. DCFS did not report having any discussions regarding ICWA with any relatives at this time. J. was subsequently placed with maternal great-aunt.

Father completed a Parental Notification of Indian Status form (ICWA-020) on August 23, 2023. He checked the box indicating that his paternal grandfather and paternal grandmother were members of a Cherokee tribe. He did not provide their names on the form.

In its August 2023 jurisdiction/disposition report, DCFS reported that a children's social worker (CSW) spoke with maternal great-aunt, who is maternal grandfather's sister. She denied any Native American ancestry in the family on maternal grandfather's side. The CSW also spoke with maternal grandmother, who stated that her grandmother (maternal great-great-grandmother) was Cherokee. She did not recall her grandmother's full name or date of birth, but provided names and dates of birth for maternal grandfather P.D. (now deceased) and all four maternal great-grandparents, plus some dates of death. DCFS also spoke with maternal great-uncle and maternal aunt, both of whom denied any Native American ancestry. Godmother, who was mother's friend, said she did not know whether mother's family had Native American ancestry.

4

On August 1, the CSW spoke to father, who stated he was unsure about any Native American ancestry and asked her to speak to paternal grandmother. After several attempts to reach paternal grandmother, DCFS spoke to her on August 8, 2023. Paternal grandmother stated that her great-grandmother A.D. (paternal great-great-great grandmother) was part Cherokee. She did not know additional information, but provided the names and dates of birth for her parents (paternal great-grandparents). Paternal grandmother stated she might be able to obtain additional information if the CSW followed up later. She also gave the CSW contact information for paternal grandfather E.T. DCFS reported that its efforts to reach paternal grandfather were unsuccessful.

In the jurisdiction report, DCFS also noted that father's parental rights had been terminated over his other child, P. Following an appeal, the case was remanded for further ICWA inquiry. In July 2023, the juvenile court found that DCFS had made a diligent inquiry and that ICWA did not apply.

The court held the adjudication hearing in August 2023. Maternal great-aunt, maternal grandmother, maternal aunt, and paternal aunt D.T. attended. The court sustained the petition as to father, found jurisdiction over J. under section 300, subdivisions (a), (b)(1), and (j), and found that removing the child was necessary. The court denied reunification services for father pursuant to section 361.5, subdivision (b). As to ICWA, at the hearing, the court noted father's ICWA-020 form and asked father whether his grandparents were registered with a tribe. Father stated he did not know and that both paternal great-grandparents were deceased. The court ordered DCFS to "follow up with any and all available relatives about the possibility of

5

Native American ancestry" and to "follow up with the family and the tribes."

DCFS sent ICWA notices (ICWA-030) on September 7, 2023 to father, three Cherokee tribes, the Bureau of Indian Affairs, and the secretary of the interior, listing multiple Cherokee tribes for possible eligibility.  The notice contained J.'s name and date and place of birth; mother's and father's names, current and former addresses, and dates and places of birth; the names, current addresses, and dates of birth for both grandmothers; and the names and dates of birth for both grandfathers.  For great-grandparents, the notice included names (maiden and married), dates and places of birth, and dates and places of death for both maternal great-grandmothers; names and partial birth and death information for both maternal great-grandfathers; the names and dates of birth for paternal great-great-great grandmother; the name of one paternal great-grandmother; and the name and date of birth for paternal great-grandfather.  The form also listed names and dates of birth for maternal great-aunt, maternal great-uncle, maternal aunt, and paternal aunt D.T.

In a September 7, 2023 last-minute information, DCFS reported that paternal grandfather denied Native American ancestry in his family and denied any knowledge of paternal grandmother having Native American ancestry in her family.  DCFS also followed up on September 5, 2023 with paternal grandmother, who stated she had no further information related to her ancestry.  DCFS also filed a report in September assessing paternal aunt D.T. for possible placement.  DCFS noted several conversations with paternal aunt D.T. regarding J.'s placement and visitation, but did not state that it had asked about ICWA.

6

DCFS also spoke regarding placement to paternal aunt Y.V., who lived with paternal aunt D.T. and J.'s half-sibling P.

At the next hearing on September 12, 2023, multiple relatives attended. The court deferred making an ICWA finding pending responses from the tribes.

DCFS received a response letter from the Eastern Band of Cherokee Indians on September 14, 2023, indicating that J. was neither registered nor eligible to register as a member. DCFS received similar response letters from the United Keetoowah Band of Cherokee Indians and from the Cherokee Nation. Based on these responses and the lack of any new information, DCFS recommended in its section 366.26 report that the court make an ICWA finding.

At the permanency planning hearing on December 18, 2023, the court found that J. was adoptable, ordered adoption as the permanent plan, designated maternal great-aunt P.D. as the prospective adoptive parent, and terminated father's parental rights. The court did not make ICWA findings at the hearing and the issue was not raised by any party.

In a status report in February 2024, DCFS repeated the previously reported information regarding ICWA and requested the court make an ICWA finding at the next hearing. DCFS filed a walk-on hearing request on February 9, again asking the court to make an ICWA finding.

Father appealed on February 16, 2024 from the court's order terminating his parental rights.

At the next review hearing on February 21, 2024, the court found that DCFS "has made active efforts and has determined

that the court has no reason to know or believe" that ICWA applied.  The court accordingly found that ICWA did not apply.[3]

## DISCUSSION

The only issue in this case is whether DCFS and the court properly complied with ICWA and related state statutes.  Father contends that the court's finding that ICWA did not apply is invalid due to DCFS's failure to discharge its duty of inquiry into J.'s possible Indian heritage.  We disagree.

## I.     *Legal Standards*

"In any given case, ICWA applies or not depending on whether the child who is the subject of the custody proceeding is an Indian child." (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90.)  Both ICWA and state statutory law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4); accord, § 224.1, subds. (a)-(b).)  "The increased protections of ICWA apply 'where the court knows or has reason to know that an Indian child is involved.'" (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1130, quoting 25 U.S.C. § 1912(a); 25 C.F.R. § 23.107(b)(2) (2024).)[4]

California law imposes on DCFS and the juvenile court an affirmative and continuing duty to inquire whether a dependent child is or may be an Indian child.  (§ 224.2, subd. (a); *Dezi C.*,

---

[3]     DCFS requested that we take judicial notice of the juvenile court's February 21, 2024 minute order. As we discuss further below, we grant that request.

[4]     While this appeal was pending, the Supreme Court decided companion cases *Dezi C., supra*, 16 Cal. 5th 1112 and *In re Kenneth D.* (2024) 16 Cal.5th 1087 (*Kenneth D.*).  At our request, the parties submitted supplemental briefs regarding the relevance of those cases to this appeal.

*supra*, 16 Cal.5th at pp. 1131–1132; *In re Isaiah W.* (2016) 1 Cal.5th 1, 9.)

DCFS's duty of inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2); see also *Dezi C.*, *supra*, 16 Cal.5th at p. 1132.) "Extended family member" means "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see also § 224.1, subd. (c).)

If this initial inquiry creates a "reason to believe" a child is an Indian child, DCFS is required to "make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." (§ 224.2, subd. (e); see also *Dezi C.*, *supra*, 16 Cal.5th at p. 1132; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.) "The required further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Dezi C.*, *supra*, 16 Cal.5th at pp. 1132-1133, citing § 224.2, subd. (e)(2)(A)–(C).)

If the further inquiry gives DCFS a "'reason to know'" the child is an Indian child, then the formal notice requirements set forth in section 224.3 apply. (§§ 224.2, subd. (d), 224.3, subd. (a); *In re D.S., supra*, 46 Cal.App.5th at p. 1052.) "The juvenile court

9

may alternatively make a finding that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child, so ICWA does not apply." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134, quoting § 224.2, subd. (i)(2).).)

We generally review the juvenile court's ICWA findings under the substantial evidence test. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review. [Citations.] "'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.'" [Citations.]" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law, there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Id.* at p. 1141.)

## II. *Analysis*

Father contends that DCFS failed to fulfill its duty of further inquiry required by ICWA and related state law. DCFS

10

asserts that it conducted an adequate further inquiry, including informal notice to three Cherokee tribes.  We agree with DCFS.

As an initial matter, the parties disagree as to whether we should take judicial notice of the juvenile court's February 21, 2024 minute order, issued after the court's December 2023 order terminating father's parental rights.  Father contends we should not consider it as post-judgment evidence, citing *Kenneth D., supra,* 16 Cal.5th 1087.  DCFS contends that *Kenneth D.* does not apply to the circumstances of this appeal.  We conclude that the limitations on post-judgment evidence set forth in *Kenneth D.* do not apply to the order at issue.

In *Kenneth D.*, *supra*, 16 Cal.5th at p. 1096, the juvenile court found ICWA did not apply before the department or the court had conducted any inquiry of the father or paternal family members.  While the father's appeal was pending, the department sought to augment the record on appeal with evidence of its post-judgment efforts to comply with ICWA. (*Ibid*.)  The appellate court granted the motion and, based on the new evidence, concluded that the initial inquiry error was harmless.  (*Id*. at pp. 1096-1097.)  The Supreme Court reversed, holding that "[w]here the juvenile court finds that ICWA does not apply based on an inadequate inquiry into a child's native heritage, an appellate court, absent exceptional circumstances, may not consider evidence uncovered during a postjudgment inquiry to conclude the failure to conduct a proper inquiry was harmless."  (*Id*. at p. 1107.)  The Court reasoned that such evidence "should be presented to the juvenile court in the first instance for that court's determinations regarding the adequacy of the inquiry and whether ICWA applies under these circumstances."  (*Id*. at p. 1106.)

11

Here, the circumstances do not require us to undertake any factfinding based on post-judgment evidence. At the time the court terminated father's parental rights, DCFS had presented all of its evidence regarding its inquiry efforts and asked the court to make an ICWA finding. The court did not make an explicit finding at the section 366.26 hearing, but then did so two months later, when DCFS renewed its request. The record does not reveal that DCFS presented any additional evidence to the court regarding ICWA between the termination of father's parental rights and the court's finding that ICWA did not apply. As such, we may take judicial notice of the court's February 2024 order finding that DCFS conducted an adequate and diligent further inquiry, that there was no reason to know that J. was an Indian child, and that therefore that ICWA did not apply. In doing so, we are considering the sufficiency of the same evidence that was before the juvenile court at the time of the challenged ICWA finding.

Turning to the substance of the court's ICWA findings, DCFS does not dispute that its initial inquiry in this case revealed a "reason to believe" that J. might be an Indian child, based on the identification of possible Cherokee heritage by both grandmothers. Thus, DCFS agrees that it had a duty to further inquire of father, as well as J.'s extended maternal and paternal family to determine whether there was a "reason to know" that ICWA applied. DCFS argues that it satisfied this duty. We agree.

As our Supreme Court explained, the statutes do "not require reversal in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." (*Dezi C., supra*, 16 Cal.5th at p. 1140.) Further,

12

"section 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.  The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Ibid*.)

Here, DCFS and the court spoke with father, paternal grandmother, paternal grandfather, paternal aunt D.T., and paternal great-cousin on father's side.  All denied native heritage, except for paternal grandmother and father, who stated he was unsure and referred DCFS back to paternal grandmother. After paternal grandmother identified potential Cherokee heritage through her great-grandmother, DCFS gathered the names and birthdates for her relevant ancestors and then followed up to ensure that she had no further information to share.  On mother's side, DCFS and the court spoke with maternal grandmother, maternal great-uncle, maternal great-aunt, maternal aunt, and godmother, who was also mother's friend.  All of these individuals denied any knowledge of heritage, except for maternal grandmother.  She provided DCFS with all of the names and birthdates for maternal grandfather, all four maternal great-grandparents, and the name of the maternal great-great-grandmother she believed was Cherokee.  DCFS provided this information in its informal notices to the Cherokee tribes, as well as the names, birth (and death where applicable) dates and locations, and addresses for multiple other family members.  All three tribes noticed responded that J. was not enrolled and was not eligible for membership.  In sum, DCFS questioned numerous family members on both sides of J.'s family regarding possible native heritage, followed up where required,

13

and gathered detailed information regarding J.'s direct family lineage. The record does not reveal any relatives who were identified as possibly having additional information whom DCFS failed to question. As a result of these efforts, DCFS had significant familial information to pass along to the Cherokee tribes in their review of J.'s potential membership. On this record, we find no error in the juvenile court's conclusion that DCFS conducted an adequate and diligent further inquiry and thus complied with its duty under ICWA and accompanying state statutes.

Father contends DCFS's inquiry was "incomplete" because DCFS did not "sufficiently" inquire of every available extended family member. He specifically lists a handful of maternal and paternal relatives whom he claims DCFS was required to locate and interview. However, DCFS and/or the court *did* speak with several of the family members father cites, including paternal grandfather, paternal great-cousin, maternal aunt, and maternal great-uncle, and they denied any knowledge of native ancestry. Several others, namely paternal great-grandparents, are deceased. Still others, maternal "cousins" T.S. (maternal aunt's cousin) and T.B. (the child of maternal great-aunt) do not qualify as "extended family members." (See 25 U.S.C. § 1903(2); § 224.1, subd. (c).)[5] We also note that the conclusion that ICWA did not

---

[5] Father also refers to two individuals identified by last name who were present at the adjudication hearing as potential relatives. There is no further information in the record regarding these individuals or whether they were J.'s relatives, although we note that the woman, Ms. S., may be maternal cousin T.S., as they share a surname.

apply to father's side of the family was bolstered by the same finding by the juvenile court in the case of J.'s half sibling, P.

More importantly, DCFS and the court spoke with at least 10 family members regarding possible native heritage, followed up with the individuals who indicated they might have further information, and then included extensive available information in the notices to the Cherokee tribes.  The purpose of further inquiry is to gather the information necessary to allow the court to "determine whether there is reason to know a child is an Indian child," including the requirement to provide the relevant tribes with "information identified by the tribe as necessary for the tribe to make a membership or citizenship eligibility determination."  (§ 224.2, subd. (e)(2).) DCFS's efforts here achieved this aim; it was not required to exhaustively find and interview every possible relative.  Notably, father does not contend that the notices sent to the tribes were insufficient or erroneous in any respect.

Father does not cite any authority finding an inadequate inquiry by a child welfare department under similar circumstances.  Instead, the cases father cites underscore the stark contrast between this case and those in which the inquiry was clearly inadequate, as the departments in those cases either made no effort to speak to anyone other than the child's parents, or failed to follow up on known leads identifying possible native ancestry.  (See *Dezi C., supra*, 16 Cal.5th at p. 1141 [inadequate where department's inquiry "extended no further than mother and father," despite other relatives being "readily available"]; *In re S.R.* (2021) 64 Cal.App.5th 303, 315 [further inquiry required where grandfather identified his mother as a potential tribal member]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 404 ["Based

15

on the representation by paternal grandmother that she had Cherokee ancestry through her grandmother, DCFS was required to engage in further inquiry."]; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 786-787 [agency failed to conduct any investigation despite mother's identification of possible ancestry].)

Despite father's argument, none of these cases requires DCFS to interview every single available family member and to ask those individuals for contact information for others.  Indeed, in *Dezi C.* the Court expressly cautioned that, although an adequate inquiry requires the department to reach "beyond parents to extended family members," that "conclusion does not require reversal in all cases in which every possible extended family member has not been asked about the child's Indian ancestry." (*Dezi C., supra*, 16 Cal.5th at pp. 1140–1141.) Instead, "the focus of the court's analysis should not be on the number of individuals interviewed, but on whether the agency's ICWA inquiry has yielded reliable information about a child's possible tribal affiliation." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1009, disapproved of on other grounds by *Dezi* C., *supra*, 16 Cal. 5th at p. 1152, fn. 18.)  Substantial evidence supports the juvenile court's conclusion that DCFS conducted a reasonable inquiry, which yielded reliable information and allowed the court to find it had no reason to know that ICWA applied.

16

## DISPOSITION

The juvenile court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.


ZUKIN, J.

17